IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PATRICK J. MCPHERSON, | ) | |
| | ) | |
| Plaintiff, | ) | 8:04CV51 |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| RED ROBIN INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the defendant's Motion for Summary Judgment (Filing No. 28).[1] The defendant filed a brief (Filing No. 31) and an index of evidence (Filing No. 29) in support of the motion. The plaintiff filed a brief (Filing No. 63) and an index of evidence (Filing No. 64) in opposition to the motion. The defendant then filed a reply brief (Filing No. 68) and an index of evidence (Filing No. 69) in support thereof.

## INTRODUCTION

The plaintiff is pursuing three claims against Red Robin International, Inc. based upon alleged injuries following a February 7, 2003 incident at one of the defendant's restaurants. In Count One, the plaintiff alleges he was defamed *per se* by statements of an employee of the defendant made on various dates following the February 7, 2003 incident and the defendant is liable on a theory of respondeat superior. In Count Two, the plaintiff alleges he was injured by the defendant's negligent selection, training, and supervision of its employees in the implementation of the defendant's marketing strategy. In Count Three, the plaintiff alleges the defendant ratified the statements of its employees defaming the plaintiff. The plaintiff prays for general and special compensatory damages, for costs of the action, and any other additional relief the court deems reasonable. The defendant seeks summary judgment

---

[1] The undersigned magistrate judge exercises jurisdiction over this matter after consent by the parties. **See** Filing No. 12.

on all of the plaintiff's claims. The court will address the legal issues in the same sequence as in the parties' briefs.

## FACTUAL BACKGROUND

The defendant is the owner and operator of the Red Robin restaurant located at 14455 West Maple Road in Omaha, Nebraska (the Restaurant). Filing No. 6 ¶ 7. The defendant adopted and implemented a sales and marketing strategy that included designating an employee to wear a full body costume of the Red Robin mascot (mascot). *Id.* ¶ 8. The full body costume of the mascot consists of five pieces: a head, a large body, a pair of tights, a pair of socks, and a pair of shoes. Filing No. 30, Deposition of Brigitte Adamsen (Def. Ex. B), p. 25. An individual wearing the mascot costume has decreased visibility and hearing. *Id.* at 26-28. As part of such sales and marketing strategy, the mascot entertained the Restaurant's patrons by interacting, entertaining, greeting, and taking photographs with the Restaurant's patrons. Filing No. 6 ¶ 8; Filing No. 30, Aff. of Robert Ritter (Def. Ex. C) ¶ 8. In furtherance of its sales and marketing strategy, the defendant had a policy requiring employees whose duties included wearing the mascot costume "to complete training and certification." Def. Ex. C ¶ 10. The defendant's policy also required that an escort accompany the mascot at all times while the mascot is interacting with patrons. *Id.* ¶ 9.

Brigitte M. Adamsen (Adamsen) was hired to work as a mascot/hostess at the Restaurant in December of 2002, prior to the Restaurant's grand opening in early February 2003. Def. Ex. B, p. 14-15. For approximately three years prior to being hired by the defendant, Adamsen worked in the restaurant industry, including the following: House of Lee, a Chinese restaurant, taking orders, operating the cash register, and answering the phone; and Charleston's Restaurant as a hostess. Def. Ex. B p. 13. Robert Ritter (Ritter), the former general manager of the Restaurant, testified via affidavit that Adamsen was qualified and had the necessary skills to perform the duties of a Restaurant host and mascot. Def. Ex. C ¶ 12.

Prior to the Restaurant's grand opening, Adamsen underwent two weeks of training. Def. Ex. B p. 15; Def. Ex. C ¶ 11. The hostesses' manager, Terry Daniels (Daniels), and other of the defendant's employees executed the training, which included watching informational

videos, participating in group exercises, reading documents and taking a test. Def. Ex. B p. 15-18. The documents advised on the various dishes served by the Restaurant, and a sheet describing the duties of the mascot including that employees could not damage the mascot costume, talk while wearing the mascot costume, or play around in the mascot costume. *Id.* at 18-19. One of the videos also covered the duty of the mascot. *Id.* at 20, 82. Adamsen testified by deposition, however, that she did not remember the precise concepts covered by the video, nor did she remember ever being trained on how to handle members of the public who became angry, drunk, or loud and obnoxious, or were generally misbehaving. *Id.* at 20, 83. Training did emphasize that all incidents or accidents had to be reported to management. *Id.* at 20-21, 85-86.

On the evening of February 7, 2003, Ritter and Daniels were on duty at the Restaurant. Def. Ex. C ¶ 4. Adamsen assumed the duty of wearing the mascot costume that evening. Filing No. 6 ¶ 12. This was the first occasion Adamsen had played the role of the mascot, though she had acted as the mascot's escort on a few prior occasions. Def. Ex. B p. 21-22. While acting as the mascot, Adamsen, accompanied by an escort, interacted with the plaintiff and seven other individuals who were patrons of the Restaurant. Filing No. 6 ¶ 9-10. At the plaintiff's booth, Adamsen waved at the party, did the "chicken dance," and posed for two photographs at the plaintiff's booth—posing for one photograph with the plaintiff. *Id.* ¶ 10. During the interaction, Adamsen testified via affidavit that she heard someone wonder aloud whether the mascot was a boy or a girl. Def. Ex. B p. 31. When Adamsen was beginning to pose with a second patron, whom Adamsen later identified as the plaintiff, Adamsen testified she felt inappropriate groping, as if the plaintiff was trying to determine her gender. *Id.* at 31, 33. Adamsen pulled away from the plaintiff, but was pulled back to have the second photograph taken. *Id.* at 33. At some point during Adamsen's interaction with the plaintiff's party, she heard someone comment on "having sex with the bird." *Id.* at 33-34. Adamsen was not able to identify the speaker of the comment. *Id.* at 34.

During Adamsen's deposition, she testified that she had no doubt that the inappropriate touching occurred during her encounter with the plaintiff. *Id.* at 50. The plaintiff contests much of Adamsen's account of the February 7, 2003 incident, including the allegation

3

that the plaintiff was the second patron at the table photographed with the mascot, and that the plaintiff touched Adamsen in any way other than the touching depicted in his photograph with Adamsen. Filing No. 58, Dep. of Patrick J. McPherson (Pl. Ex. 3) p. 56-58.

Adamsen left the table following the second photograph. Def. Ex. B at 50. Adamsen went into the kitchen with the escort. *Id.* at 34-35. Adamsen was upset and asked the escort to retrieve Daniels. *Id.* at 35. While in the kitchen, Adamsen related her version of the incident to a manager named Steve. *Id.* at 38. Steve was a manager from another of the defendant's restaurants who was working as a trainer at the Restaurant that evening. *Id.* at 38-39. Adamsen remembers Steve recounting the incident to Ritter because Steve stated he thought it was appropriate to speak to the party regarding the incident. *Id.* at 39-40. Once Daniels arrived, Adamsen reported to Daniels that she had been groped, touched inappropriately, while at the plaintiff's table, that she felt uncomfortable, and that she wanted to go home. *Id.* at 36. Adamsen did not make a written report of the incident that evening. *Id.* at 92. Nor did an employee of the defendant make any further inquiry to Adamsen about the incident. *Id.* at 106-07.

Adamsen testified she does not remember reporting the incident to Ritter. *Id.* at 37. Ritter testified Adamsen said the plaintiff had pressed on the chest of the mascot's costume. Def. Ex. C ¶ 13. Ritter specified that Adamsen did not report to him that the plaintiff had touched her breast, thighs, or buttocks, other than pressing on the chest of the mascot's costume. *Id.* Following receipt of Adamsen's report, Ritter watched the booth at which the incident occurred for the rest of the evening. *Id.* ¶ 14; Filing No. 59, Dep. of Rob Ritter (Pl. Ex. 4) p. 77. After such observation, Ritter did not believe any further investigation was required at that time and did no further investigation that night. Def. Ex. C ¶ 14; Pl. Ex. 4 p. 77-80.

Adamsen left the Restaurant shortly after the incident. Def. Ex. B p. 37. Adamsen went home and reported the incident to her parents. *Id.* at 41-42. At that time, her father stated they would be reporting the incident to law enforcement first thing the next morning. *Id.* at 42.

During the two days following the incident, Adamsen's father reported the incident to law enforcement via telephone, and Adamsen and her parents made a report to law enforcement on or about February 9, 2003. Filing No. 6 ¶ 15; Def. Ex. B p. 42-43. Leah

4

Karph, Adamsen's escort during the February 7, 2003 incident, and Karph's mother accompanied the Adamsens to make the report to law enforcement. Def. Ex. B p. 44.

On or about February 9, 2003, the defendant issued a written statement (the Written Statement) to local media outlets regarding the incident. Filing No. 6 ¶ 29. In the Written Statement, the defendant said, in pertinent part: "we stand by and remain, as always, supportive to our team members and our guests to create a positive environment for all." Filing No. 30, Aff. of Michael J. Snyder (Def. Ex. D) ¶ 9. Michael J. Snyder (Snyder), Chief Executive Officer of the defendant, testified via affidavit that the Written "Statement was not intended to affirm statements or allegations made by [Adamsen] or her family relating to the facts and circumstances giving rise to this matter." Def. Ex. D ¶ 10. Snyder further testified that, at the time the Written Statement was issued the defendant did not have complete knowledge of all facts pertaining to statements or allegations made by [Adamsen] or her family relating to the facts and circumstances giving rise to this matter." *Id.* ¶ 10. At no time did Adamsen have authority to make statements on behalf of the defendant. *Id.* ¶ 5; Def. Ex. C ¶ 15, 17. Any statements made by Adamsen were made without the knowledge of the defendant. Def. Ex. D ¶ 8; Def. Ex. C ¶ 16.

## LEGAL ANALYSIS

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." **See** Fed. R. Civ. P. 56(c); **McAllister v. Transamerica Occidental Life Ins. Co.**, 325 F.3d 997, 999 (8th Cir. 2003). When making this determination, a court's function is not to make credibility determinations and weigh evidence, or to attempt to determine the truth of the matter; instead, a court must "determine whether there is a genuine issue for trial." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 249 (1986). "An issue of material fact is genuine if it has a real basis in the record." **Hartnagel v. Norman**, 953 F.2d 394, 395 (8th Cir. 1992) (**citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.**, 475 U.S. 574, 586-87 (1986)). A court must "look to the substantive law

to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" **Dulany v. Carhahan**, 132 F.3d 1234, 1237 (8th Cir. 1997) (**quoting Anderson**, 477 U.S. at 248).

Summary judgment is proper when the plaintiff fails to demonstrate the existence of a factual dispute with regard to each essential element of his claim. **Bialas v. Greyhound Lines, Inc.**, 59 F.3d 759, 762 (8th Cir. 1995). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and [the rule] should be interpreted in a way that allows it to accomplish this purpose." **Celotex Corp. v. Catrett**, 477 U.S. 317, 323-24 (1986). A party seeking summary judgment bears the responsibility of informing the court "of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." **Tenbarge v. Ames Taping Tool Sys., Inc.**, 128 F.3d 656, 657 (8th Cir. 1997) (**quoting Celotex**, 477 U.S. at 325 (noting that the movant must show "there is an absence of evidence to support the nonmoving party's case.")). Under this court's local rules:

> The moving party shall set forth in the brief in support of the motion for summary judgment a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law.

**See** NECivR 56.1(a)(1).

In the face of a properly-supported motion, "[t]he burden then shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'" **Prudential Ins. Co. v. Hinkel**, 121 F.3d 364, 366 (8th Cir. 1997) (**quoting** Fed. R. Civ. P. 56(e)). A nonmoving party may not rest upon the mere allegations or denials of its pleadings but, rather, must show specific facts, supported by affidavits or other proper evidence, showing that there is a genuine issue for trial. **See** Fed. R. Civ. P. 56(e); **Liberty Mut. Ins. Co. v. FAG Bearings Corp.**, 153 F.3d 919, 922 (8th Cir. 1998). A nonmoving party must offer proof "such

that a reasonable jury could return a verdict for the nonmoving party." **Anderson**, 477 U.S. at 248. Additionally, under this court's local rules:

> The party opposing a motion for summary judgment shall include in its brief a concise response to the moving party's statement of material facts. The response shall address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response.

**See** NECivR 56.1(b)(1).

In considering the three Counts alleged by the plaintiff, the parties' agree that Nebraska law controls. **See also, e.g., JN Exploration & Prod. v. W. Gas Res., Inc.**, 153 F.3d 906, 909 (8th Cir. 1998) ("it is axiomatic that federal courts apply state substantive law in diversity suits") (**citing Erie R.R. Co. v. Tompkins**, 304 U.S. 64, 78 (1938)). When a federal district court exercises its diversity jurisdiction over claims brought under state law causes of action, it is bound by the state's law as determined by the highest court in that state. **Foy v. Klapmeier**, 992 F.2d 774, 780 (8th Cir. 1993). "If there be no decision by that court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." **Comm'r v. Estate of Bosch**, 387 U.S. 456, 465 (1967); **see also First Colony Life Ins. Co. v. Berube**, 130 F.3d 827, 829 (8th Cir. 1998) (stating a federal court exercising diversity jurisdiction "must predict how the state's highest court would decide the issue").

### A. Count One: Defamation/Respondeat Superior

In Count One, the plaintiff alleges the defendant is liable for defamatory statements made by its employee Brigitte Adamsen regarding the February 7, 2003 incident under a theory of respondeat superior. **See** Filing No. 6, p. 2-3. The plaintiff alleges damages resulting from statements by Adamsen in the following circumstances: (i) February 7, 2003 statements to the escort and other Restaurant employees; (ii) February 7, 2003 statements

to Adamsen's parents;(iii) February 9, 2003 statements to the Omaha Police Department and Douglas County Sheriff's Office; and (iv) statements made between February 7, 2003, and July 2003 without identifying to whom such statements were made.  The defendant argues it is entitled to summary judgment as a matter of law on Count One because "the uncontroverted evidence shows that Adamsen was not acting within the scope of her employment at the time any alleged disparaging statements were made regarding the incident."  Filing No. 31, p. 8.  The plaintiff responds that statements Adamsen made to co-workers regarding the incident were within the scope of her employment.  The defendant replies that a claim of defamation cannot be made on the basis of statements to co-workers because such co-workers are not "third persons" for purposes of defamation.

> Nebraska recognizes common-law actions for slander and libel.  Under Nebraska law:
>
>> Defamation is of two types.  There are words that are actionable per se, that is, in themselves, or words may be actionable per quod, that is, only on allegation and proof of the defamatory meaning of the words used and of special damages.  **See K Corp. v. Stewart**, 526 N.W.2d 429 (Neb. 1995).  Spoken or written words are slanderous or libelous per se only if they falsely impute the commission of a crime involving moral turpitude, an infectious disease, or unfitness to perform the duties of an office or employment, or if they prejudice one in his or her profession or trade or tend to disinherit one.  **Matheson v. Stork**, 477 N.W.2d 156 (Neb. 1991).

**Hatcher v. McShane**, 670 N.W.2d 638, 644 (Neb. Ct. App. 2003).  "A claim of defamation requires:  (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."  **Nolan v. Campbell**, 690 N.W.2d 638, 646-47 (Neb. 2004).

In determining whether the defendant is entitled to summary judgment in its favor on Count One, it is necessary to distinguish between two categories of Adamsen's statements: statements made to Restaurant employees; and statements made to Adamsen's parents, officers of the Omaha Police Department and Douglas County Sheriff's Office, and other

unidentified recipients. As to the statements to Adamsen's parents, officers of the Omaha Police Department and Douglas County Sheriff's Office, and other unidentified recipients, the defendant argues Count One must fail because the plaintiff cannot prove the defendant is liable on a theory of respondeat superior.

It is true that, under Nebraska law, "one who puts a libel or slander in circulation is liable for any subsequent publications that are the natural consequence of his or her act." **McCune v. Neitzel**, 457 N.W.2d 803, 810 (Neb. 1990) **overruled on other grounds** **Holmes v. Crossroads Joint Venture**, 629 N.W.2d 511 (Neb. 2001). In the present case, however, it was Adamsen, and not the defendant, who made the alleged defamatory statements to Adamsen's parents, officers of the Omaha Police Department and Douglas County Sheriff's Office, and other unidentified recipients. Instead, the plaintiff claims the defendant is liable for any statements of Adamsen on a theory of respondeat superior. Under the theory of respondeat superior,

> The law imputes to the principal or master responsibility for the negligent acts of his or her agent or servant done in obedience to the express orders or directions of the master, or within the scope of the employee's authority or employment in the master's business, and if those acts cause injury to third persons, the law holds the principal or master liable therefor. For injuries caused by the negligent act of an employee not directed or ratified by the employer, the employee is liable because he or she committed the act which caused the injury, while the employer is liable, not as if the act had been done by the employer, but because of the doctrine of respondeat superior, the rule of law which holds the master responsible for the negligent act of his or her servant committed while the servant was acting within the master's business. Unless the servant is liable, there can be no liability on the part of the master. The principal's liability, if any, is not that of a joint tort-feasor, but is derived solely from the liability of its agent, if any.

**Plock v. Crossroads Joint Venture**, 475 N.W.2d 105 (Neb. 1991) (**citing**, *inter alia*, **Pullen v. Novak**, 99 N.W.2d 16 (Neb. 1959)) (internal citations omitted), **overruled on other grounds Welsch v. Graves**, 582 N.W.2d 312, 316 (Neb. 1998), **and Hynes v. Hogan**, 558 N.W.2d 35, 40 (Neb. 1997). The question of whether or not Adamsen is liable for the claimed

defamation is not before the court. Instead, the defendant argues it is not liable for the alleged torts because the alleged torts did not occur while the servant was acting within the master's business.

The Nebraska Supreme Court has explained:

> [I]n order to sustain a recovery under the doctrine of respondeat superior, the relationship of master and servant must be shown to exist at the time of the injury and with respect to the particular transaction resulting in the alleged tort, and the servant must be shown to be acting within the scope of his employment. Further, the . . . conduct of a servant is within the scope of employment if, but only if, it is of the kind he is employed to perform, it occurred substantially within the authorized time and space limits, and it is actuated, at least in part, by a purpose to serve the master. [I]t must be made to appear that the employee whose act is in question has authority to perform the class of service to which the act belongs.

**Strong v. K & K Investments, Inc.**, 343 N.W.2d 915-16 (Neb. 1984)) (citations omitted). The court finds the alleged defamatory statements to Adamsen's parents, officers of the Omaha Police Department and Douglas County Sheriff's Office, and other unidentified recipients were not made while Adamsen was acting within the scope of her employment. The uncontroverted evidence shows the making of public statements was not the kind of conduct Adamsen was employed to perform, the alleged defamatory conduct did not occur within any authorized time or space limits, and the alleged defamatory statements were not actuated by a purpose to serve the master. Therefore, Count One claiming the defendant is liable for Adamsen's statements to her parents, officers of the Omaha Police Department and Douglas County Sheriff's Office, and other unidentified recipients under a theory of respondeat superior fails. The defendant may not be held liable for any of Adamsen's statements made outside the course of her employment.

The defendant also argues that it is entitled to summary judgment on the remaining defamatory statements, those made by Adamsen to Restaurant co-workers on the night of the alleged incident, because there was no disclosure to a third party. To support this argument, the defendant cites **Halsell v. Kimberly-Clark Corp.**, 683 F.2d 285 (8th Cir. 1982). In **Halsell**, the United States Court of Appeals for the Eighth Circuit affirmed a district court

holding, under Wisconsin law, that "communications between officers of a corporation or between different branches of the same corporation, in the course of corporate business, do not consitute publications to third persons." *Id.* at 289 (**citing** *Lehner v. Associated Press*, 254 N.W. 664, 666 (Wis. 1934); *Flynn v. Reinke*, 225 N.W. 742, 744 (Wis. 1929)).  In the cases cited in *Halsell*, the Wisconsin Supreme Court explained that communications among constituents of a corporation or association are conditionally privileged.  *Lehner*, 254 N.W. at 666-67 ("This court has held that words spoken to one having an interest in a defamatory communication are conditionally privileged."); *Flynn*, 225 N.W. at 744 (noting "[t]he more liberal rule, and the one which seemingly has the support of the weight of modern authority, is that, where the communication is made to a servant or business associate in the ordinary and natural course of business, there is no actionable libel").

Like Wisconsin, Nebraska law recognizes a qualified privilege as an affirmative defense to a defamation claim.  *Malone v. Eaton Corp.*, 187 F.3d 960, 963 (8th Cir. 1999) (**citing** *Turner v. Welliver*, 411 N.W.2d 298, 307 (Neb. 1987)); *McCune*, 457 N.W.2d at 810; *Helmstadter v. North Am. Biological, Inc.,* 559 N.W.2d 794, 800 (Neb. Ct. App. 1997).

> Conditional or qualified privilege comprehends communications made in good faith, without actual malice, with reasonable or probable grounds for believing them to be true, on a subject matter in which the author of the communication has an interest, or in respect to which the author has a duty, public, personal, or private, either legal, judicial, political, moral, or social, made to a person having a corresponding interest or duty.  A communication between those sharing a common interest is conditionally privileged.

*Helmstadter,* 559 N.W.2d at 801 (**citing** *Turner*, 411 N.W.2d at 298).  For example, in *Molt v. Lindsay Mfg. Co.*, 532 N.W.2d 11, 17 (Neb. 1995), the Nebraska Supreme Court found a qualified privilege exists where the defendant's employees were the recipients of the alleged defamatory communications and such "employees had a bona fide interest in the subject matter or stood in such relation that it was reasonable or proper for him or her to receive such information." *Id.* at 17.

Despite the existence of a qualified privilege affirmative defense to defamation, the defendant did not plead qualified privilege as an affirmative defense in its answer. Rule 8(c) of the Federal Rules of Civil Procedure dictates that certain specified defenses and "any other matter constituting an avoidance or affirmative defense" must be affirmatively pleaded. Fed. R. Civ. P. 8(c). Whether or not a defense is an "affirmative defense" for purposes of Rule 8(c) is a matter of federal law. ***Sayre v. Musicland Group, Inc.***, 850 F.2d 350, 352-53 (8th Cir. 1988) ("Federal courts considering non-federal questions [in diversity actions] apply federal rules of procedure, and follow state law to resolve issues of substance. . . . The pleading of affirmative defenses is a procedural matter.") (**citing *Erie R.R. Co.***, 304 U.S. at 78; ***Bank of St. Louis v. Morrissey***, 597 F.2d 1131, 1134-35 (8th Cir. 1979)). The Eighth Circuit Court of Appeals has made it clear that a qualified privilege is an affirmative defense for purposes of federal law. ***Cunningham v. Skaggs Cos.***, 729 F.2d 1156, 1158 (8th Cir. 1984); ***White v. Chicago, Burlington & Quincy R.R.***, 417 F.2d 941, 946 (8th Cir. 1969).

The court cannot consider an affirmative defense unless it has been properly pleaded. **See *Day v. Toman***, 266 F.3d 831, 836 (8th Cir. 2001). Therefore, the defendant is not entitled to judgment as a matter of law as to Adamsen's statements to co-workers at the Restaurant.

**B.    Count Two: Negligent Selection, Training, and Supervision of Employees in the Implementation of Defendant's Marketing Strategy**

In Count Two, the plaintiff alleges the defendant's negligent selection, training, and supervision of its employees are the cause of the plaintiff's severe and permanent personal injuries and damages. **See** Filing No. 6, p. 3-5. The defendant moves the court for summary judgment on the plaintiff's claims in Count Two. First, the defendant argues the plaintiff's claim of negligent selection fails because the defendant was not negligent in selecting Adamsen and any alleged deficiency of Adamsen was not the proximate cause of the plaintiff's injury. Second, the defendant argues the plaintiff's claim of negligent training must fail because Adamsen received reasonable training, the risk of the injury which occurred was not foreseeable, and the plaintiff's injury was not the reasonable or probable consequence of the

12

alleged acts or omissions of the defendant. Third, the defendant argues the plaintiff's claim of negligent supervision must fail because Adamsen's supervision was adequate, the alleged tortious conduct was not a foreseeable risk inherent in Adamsen's duties, and the plaintiff's injury was not the reasonable and probable consequence of the alleged acts or omissions of the defendant.

The plaintiff responds that the defendant is not entitled to summary judgment on this Count. First, the plaintiff does not refute the defendant's arguments as to the alleged negligent hiring of Adamsen. Second, there is a genuine issue of material fact as to whether the defendant's supervision of Adamsen was adequate. Third, there is a genuine issue of material fact as to whether or not the defendant's training was sufficient and reasonable in light of the mascot's duties. In its reply, the defendant argues Count Two must fail because there is no evidence the plaintiff's injury was the reasonable and probable consequence of the alleged acts or omissions of the defendant.

"To state a cause of action for negligence, one must plead facts from which it can be inferred that the defendant owed a duty to protect the plaintiff from injury, that the defendant failed to discharge that duty, and that damage proximately resulted from such failure." ***Schieffer v. Catholic Archdiocese of Omaha***, 508 N.W.2d 907, 916 (Neb. 1993) (**citing *Christianson v. Educ. Serv. Unit No. 16***, 501 N.W.2d 281 (Neb. 1993)). "[I]n negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in light of the apparent risk." ***Moglia v. McNeil Co.***, 700 N.W.2d 608, 618 (Neb. 2005). What changes with regard to each alleged type of negligence is to whom a duty is owed. ***Id.***

As to the plaintiff's negligent training and supervision claims, the defendant argues any alleged damages were not foreseeable risks of harm to the plaintiff. Foreseeability is an argument against finding the defendant owed a duty to the plaintiff. **See *Sacco v. Carothers***, 601 N.W.2d 493, 498 (Neb. 1999). Whether or not the defendant owes a legal duty to the plaintiff is a threshold issue in determining whether a plaintiff can succeed on a negligence claim. ***Hongning Fu v. State***, 643 N.W.2d 659, 669 (Neb. 2002). If the defendant has no legal duty, the plaintiff has no actionable negligence. ***Id.***

> In determining whether a duty exists, [the] court employs a risk-utility test, considering (1) the magnitude of the risk, (2) the relationship of the parties, (3) the nature of the attendant risk, (4) the opportunity and ability to exercise care, (5) the foreseeability of the harm, and (6) the policy interest in the proposed solution.

*Moglia*, 700 N.W.2d at 618 (**citing** *Fuhrman v. State*, 655 N.W.2d 866, 873 (Neb. 2003)); **see also** *Knoll v. Board of Regents*, 601 N.W.2d 757, 761 (Neb. 1999) ("Foreseeability alone is not dispositive."); *Popple v. Rose*, 573 N.W.2d 765, 769 (Neb. 1998) ("Foreseeability is also an important factor in establishing a duty. The breadth of the duty owed "is graduated according to the danger attendant upon the activities of a business and the circumstances surrounding each particular case." *Sacco*, 601 N.W.2d at 500. "The question of whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation." *Doe v. Gunny's Ltd. P'ship*, 593 N.W.2d 284, 289 (Neb. 1999); **see also** *Knoll*, 601 N.W.2d at 763 ("We conclude that foreseeability, in the duty context, is a legal question for the court.").

In *Struempler v. Estate of Kloepping*, 626 N.W.2d 564 (Neb. 2001), the Nebraska Supreme Court found the defendants did not owe the plaintiff a legal duty because the attendant risk of harm was modest, and the magnitude of the risk of harm was insufficiently high. *Id.* at 567 (involving plaintiff's suit for damages resulting from her physical injuries incurred when assisting her 80-year-old neighbor into his wheelchair). In *Turner v. Fehrs Neb. Tractor & Equip. Co.*, 609 N.W.2d 652 (Neb. 2000), the Nebraska Supreme Court found the defendant did not owe the plaintiff a legal duty because the plaintiff had the opportunity and the ability to exercise care, and public policy encouraged keeping the burden on the plaintiff to avoid the harm. *Id.* at 658 (involving plaintiff's suit against his employer for damages resulting from the theft of the plaintiff's own tools from his place of employment). The Nebraska Supreme Court has found a defendant owed a legal duty where the harm was foreseeable and the defendant had advised the plaintiff of the harm on a prior occasion. *Hongning Fu*, 643 N.W.2d at 669 ("explosions are a foreseeable risk in the context of a chemistry student's graduate research involving concentrated peroxide").

In reviewing the plaintiff's three negligence causes of action alleged as Count Two, the court finds the defendant had no legal duty to the plaintiff and, therefore, the court must grant summary judgment to the defendant as to Count Two. In considering the relationship between the parties, the Nebraska Supreme Court has "repeatedly stated that the owner of a business is not an insurer of a patron's safety." **Sacco**, 601 N.W.2d at 498. While the nature of the attendant risk—defamation—is not minor in nature, the court notes defamation does not involve the plaintiff's bodily safety. **Cf. Claypool v. Hibberd**, 626 N.W.2d 539, 541-42 (Neb. 2001) (alleging the defendants' negligence caused the death of a fourteen-year old boy); **Gunny's Ltd. P'ship**, 593 N.W.2d at 287 (alleging the defendant's negligence caused the plaintiff to be sexually assaulted in the defendant-restaurant's parking lot). The court finds the degree of risk small that a Restaurant patron will be defamed because of "misunderstandings, false or mistaken allegations of inappropriate conduct" arising from physical contact between an employee and a Restaurant patron. Filing No. 6 ¶ 26(a). Furthermore, the court finds defamation of a patron is not a foreseeable harm in light of the business activities pursued at the Restaurant. **Cf. Sacco**, 601 N.W.2d at 498.

Nor does the court find that public policy favors finding the defendant has a legal duty under these facts and circumstances. In the present case, the plaintiff complains that the defendant "failed to provide any training to Adamsen addressing how the mascot was to handle dangerous or inappropriate contact with guests, intoxicated guests, disorderly conduct by guests, or any similar situations." Filing No. 63, p. 5. The court finds that such public conduct identified by the plaintiff is conduct that should be not be promoted in society. The court should not encourage such conduct by allowing the blame for the consequences of such conduct to be shifted to the businesses whose employees suffer the brunt of such conduct. It seems, to the court, that it is likely a Restaurant patron can easily avoid being defamed by an employee as a result of "misunderstandings, false or mistaken allegations of inappropriate conduct" arising from physical contact between an employee and a Restaurant patron by the Restaurant patron's monitoring his or her own behavior.

The court finds the defendant had no legal duty to protect the plaintiff from the alleged defamation. Because the plaintiff's claims in Count Two did not withstand the threshold inquiry, the defendant's motion for summary judgment is granted with regard to Count Two.

### C.  Count Three:  Ratification

In Count Three, the plaintiff alleges the defendant's February 9, 2003 Written Statement to the local media outlets ratified the employees' defamatory statements regarding the February 7, 2003 incident. **See** Filing No. 6, p. 5-6. In its motion for summary judgment, the defendant argues it did not ratify Adamsen's unauthorized statements because it did not intend to ratify her statements, and it lacked complete knowledge of the subject matter. In his reply the plaintiff argues ignorance is not a defense to the claimed ratification and, as a principal, the defendant assumed the risk of its lack of knowledge when it failed to investigate the subject matter. In its reply, the defendant argues the February 9, 2003 Written Statement to local media outlets was not intended to ratify Adamsen's remarks and was made without complete knowledge, and any of the defendant's employees' statements made before Adamsen's statements could not ratify Adamsen's statements as such statements of the defendant's employees would have preceded Adamsen's statements in time.

As a first matter, from the face of the complaint it is unclear the precise cause of action the plaintiff intended as "ratification." Ratification is vague, and the court discerns two different legal claims are implicated by the allegations in Count Three. The first type of legal claim is that a principal may be liable for punitive damages based upon the tortious act of an agent if the principal ratified the tortious act. **See** Filing No. 31, p. 15 (**citing *Baufield v. Safelite Glass Corp.***, 829 F. Supp. 285, 287 (D. Minn. 1993) (involving Minn. Stat. § 549.20, subd. 2(d) which authorizes an award of punitive damages where a plaintiff shows, *inter alia*, the principal or a "managerial agent" of the principal ratified the act at issue). The court will assume this is not the legal claim the plaintiff intended because, "with respect to state causes of action, punitive damages contravene Neb. Const. art. 7, § 5, and are not allowed." ***State ex rel. Cherry v. Burns***, 602 N.W.2d 477, 484 (Neb. 1999) (**citing *Braesch v. Union Ins. Co.***, 464 N.W.2d 769 (Neb. 1991), **abrogated on other grounds *Wortman v. Unger***, 578

16

N.W.2d 413 (Neb. 1998); ***Distinctive Printing & Packaging Co. v. Cox***, 443 N.W.2d 566 (Neb. 1989); ***Abel v. Conover***, 104 N.W.2d 684 (Neb. 1960)).

Therefore, the court will deem the complaint as alleging a second type of legal claim: the principal ratified or acquiesced to an agent's unauthorized actions such that the principal is bound by the agent's unauthorized actions or that the agent is released from liability to the principal for any damages resulting from the agent's unauthorized actions. ***Daubman v. CBS Real Estate Co.***, 580 N.W.2d 552, 561 (Neb. 1998) (alleging ratification of actions taken in furtherance of sale of real property); **see also** Filing No. 31, p. 15 (**citing** ***W. Fertilizer & Cordage Co. v. BRG, Inc.***, 424 N.W.2d 588 (Neb. 1988) (alleging ratification of documents evidencing real property transactions); ***CIT Fin. Servs. of Kansas v. Egging Co.***, 253 N.W.2d 840 (Neb. 1977) (alleging ratification of lease purchase agreement); ***Rodine v. Iowa Home Mut. Cas. Co.***, 106 N.W.2d 391 (Neb. 1960) (alleging ratification of insurance policy)).

Under Nebraska law, "[i]t is well-established that if one, not assuming to act for himself, does an act for or in the name of another upon an assumption of authority to act as the agent of the latter, even though without any precedent authority whatever, if the person in whose name the act was performed subsequently ratifies or adopts what has been so done, the ratification relates back and supplies original authority to do the act." ***Barnhart v. Henderson***, 24 N.W.2d 854, 861 (Neb. 1946); ***Harvey Oaks Homeowner's Ass'n v. Aslan Co.***, No. A-01-390, 2002 Neb. App. LEXIS 331, at *23 (Neb. Ct. App. Dec. 24, 2002) (unpublished). That is, "[r]atification is the acceptance of a previously unauthorized contract and takes effect from the making of such a contract." ***Harvey Oaks Homeowner's Ass'n***, 2002 Neb. App. LEXIS 331, at *23-24 (**citing *Stolmeier v. Beck***, 441 N.W.2d 888, 892 (Neb. 1989)).

Neither party explains to the court, nor can the court find an explanation for, how the alleged "ratification" provides the plaintiff any relief under the facts alleged in the complaint. Even assuming the facts most favorable to the nonmoving party–that the defendant and Adamsen have a principal-agent relationship–this case does not involve any representation by Adamsen to the plaintiff that she has the authority to act on behalf of and bind the defendant as principal. **See *id.*** at *23 ("[t]he question of agency [is] the authority of one person to speak

or act for **and bind** another") (emphasis added).  Nor does the plaintiff allege Adamsen's statements represent any kind of agreement with the plaintiff that the plaintiff could seek to enforce against the defendant.  **See** *Stolmeier*, 441 N.W.2d at 709 (finding no express ratification of agreement between the agent and the plaintiffs, but holding the defendants-principals liable to the plaintiffs because the defendants-principals accepted the benefits of the agreement).

In light of the foregoing, the fact contested by the parties as to Count Three —whether the defendant knew or should have known the statements were defamatory—is not a material fact in the court's inquiry.  The court finds the ratification theory of recovery in Count Three has no application in this case.  The defendant's motion for summary judgment is granted with respect to Count Three.

Upon consideration,

**IT IS ORDERED:**

1. The defendant's Motion for Summary Judgment (Filing No. 28) is denied in part and granted in part as described below:

    a. With regard to Count One, the defendant's motion is denied.

    b. With regard to Counts Two and Three, the defendant's motion is granted.

2. The court reserves entry of judgment on Counts Two and Three until final judgment on all issues in the case is entered.

DATED this 19th day of October, 2005.

                                                 BY THE COURT:

                                                 s/Thomas D. Thalken
                                                 United States Magistrate Judge