# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **PATRICK J. MCPHERSON,** ) | |
| ) | |
| Plaintiff, ) | 8:04CV51 |
| ) | |
| vs. ) | ORDER |
| ) | |
| **RED ROBIN INTERNATIONAL, INC.,** ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the defendant's Second Motion for Summary Judgment (Filing No. 100).[1] The defendant filed a brief (Filing No. 103) and an index of evidence (Filing Nos. 101 and 102) in support of the motion. The plaintiff filed a brief (Filing No. 125) and an index of evidence (Filing No. 126) in opposition to the motion. The defendant then filed a reply brief (Filing No. 127).

## INTRODUCTION

Initially, the plaintiff pursued three claims against Red Robin International, Inc. (Red Robin) based upon alleged injuries following a February 7, 2003 incident at one of the defendant's restaurants. In Count One, the plaintiff alleged he was defamed *per se* by statements of an employee of the defendant made on various dates following the February 7, 2003 incident and the defendant is liable on a theory of respondeat superior. The remaining counts for negligent selection, training, and supervision of its employees in the implementation of the defendant's marketing strategy (Count Two) and ratification of the statements of its employees defaming the plaintiff (Count Three) were dismissed on October 19, 2005. **See** Filing No. 89. The defendant now seeks summary judgment on the plaintiff's remaining claim.

---

[1] The undersigned magistrate judge exercises jurisdiction over this matter after consent by the parties. **See** Filing No. 12.

## FACTUAL BACKGROUND

1. Red Robin is the owner and operator of the Red Robin restaurant located at 14455 West Maple Road, Omaha, Douglas County, Nebraska. **See** Filing No. 6 - Amended Complaint ¶ 7.

2. Red Robin has adopted and implemented a sales and marketing strategy to increase patronage at its restaurant by having designated employees wear a full body costume of its mascot. As part of Red Robin's sales and marketing strategy, the mascot entertains the guests and patrons of the restaurant by interacting with them at their table. *Id.* at ¶ 8.

3. Prior to the evening of February 7, 2003, Red Robin employee Brigitte M. Adamsen (Miss Adamsen), had undergone two weeks of standard Red Robin training. **See** Filing No. 30 Exhibit B - Depo. Miss Adamsen p. 15:21 to 18:15. Miss Adamsen's training emphasized that all incidents or accidents had to be reported to Red Robin management. *Id.* at p. 20:24 to 21:6.

4. Prior to the evening of February 7, 2003, Miss Adamsen also received specific training materials relating to the role of the mascot. *Id.* at p. 18:16 to 21:6.

5. On the evening of February 7, 2003, Miss Adamsen played the role of the Red Robin mascot. **See** Filing No. 6, ¶ 12. That evening, Rob Ritter (Mr. Ritter) was on duty as general manager at the Red Robin. **See** Filing No. 30 Exhibit C - Aff. of Mr. Ritter ¶ 4.

6. On the evening of February 7, 2003, Leah Karpf (Miss Karpf), also an employee of Red Robin, was the escort for Miss Adamsen. **See** Filing No. 102 Exhibit A - Depo. Miss Karpf p. 20:1-11. It was the escort's job to lead the mascot around acting as the mascot's eyes. *Id.* at p. 13 -14.

7. Prior to putting on the costume and acting as the mascot, Miss Adamsen was not informed as to the identity of the plaintiff, but was told for the first time that a group of "VIP" customers would be at the Red Robin that evening. **See** Filing No. 30 Exhibit B - Depo. Miss Adamsen p. 28:9-20; 73:2-18. Because of these customers' "VIP" status, Miss Adamsen thought she needed to "be good" and be the best employee she could be at that point in time. *Id.* at p. 74:1 to 75:3. However, Miss Adamsen was upset that one group

was receiving special treatment when other previous customers were not extended the same courtesy.  *Id.* at p. 74 to 75.  An individual wearing the mascot costume has decreased visibility and hearing.  *Id.* at 26 to 28.

8. That same evening the plaintiff was a patron of Red Robin.  Upon arrival at Red Robin, the plaintiff and his party were seated in corner booth no. 77.  Shortly thereafter, Miss Adamsen dressed as the Red Robin mascot, arrived at the booth with Miss Karpf, her escort.  **See** Filing No. 6, ¶ 9; Filing No. 102 Exhibit A - Depo. Miss Karpf p. 22 to 23.

9. The mascot was introduced to the plaintiff and his party and, among other things, posed for two photographs, one with the plaintiff.  **See** Filing No. 6, ¶ 10.

10. At that time, during the mascot's interaction with guests seated at the booth, an incident took place involving the plaintiff and Miss Adamsen in which Miss Adamsen felt the plaintiff move his hands on various parts of Miss Adamsen's body.  **See** Filing No. 30 Exhibit B - Depo. Miss Adamsen p. 31:4-14; 32:25 to 33:6); Filing No. 102 Exhibit A - Depo. Miss Karpf p.  23 to 27.  During this incident, the plaintiff admits he did come in physical contact with the mascot.  **See** Filing No. 58 - Depo. Patrick McPherson 56:15 to 57:13.

11. Following the incident, Miss Adamsen informed various Red Robin employees about the incident.  **See** Filing No. 30 Exhibit B - Depo. Miss Adamsen p. 35:8 to 41:23.  Specifically, Miss Adamsen reported to Red Robin management that she had been groped and touched inappropriately while at the plaintiff's booth, that she felt uncomfortable, and that she wanted to go home.  *Id.* at p. 35:8 to 41:23.  Miss Adamsen left the Red Robin restaurant shortly after the incident.  *Id.* at p. 36:25 to 37:5.

12. Following Miss Adamsen's report of the incident, Red Robin General Manager, Mr. Ritter, observed the booth for a period of time and did not think further investigation was required.  **See** Filing No. 30 Exhibit C -Aff. of Mr. Ritter ¶ 14.

## LEGAL ANALYSIS

**A.   Legal Standard**

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party,

"there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." **See** Fed. R. Civ. P. 56(c); **McAllister v. Transamerica Occidental Life Ins. Co.**, 325 F.3d 997, 999 (8th Cir. 2003). When making this determination, a court's function is not to make credibility determinations and weigh evidence, or to attempt to determine the truth of the matter; instead, a court must "determine whether there is a genuine issue for trial." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 249 (1986). "An issue of material fact is genuine if it has a real basis in the record." **Hartnagel v. Norman**, 953 F.2d 394, 395 (8th Cir. 1992) (**citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.**, 475 U.S. 574, 586-87 (1986)). A court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" **Dulany v. Carhahan**, 132 F.3d 1234, 1237 (8th Cir. 1997) (**quoting Anderson**, 477 U.S. at 248).

Summary judgment is proper when the plaintiff fails to demonstrate the existence of a factual dispute with regard to each essential element of his claim. **Bialas v. Greyhound Lines, Inc.**, 59 F.3d 759, 762 (8th Cir. 1995). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and [the rule] should be interpreted in a way that allows it to accomplish this purpose." **Celotex Corp. v. Catrett**, 477 U.S. 317, 323-24 (1986). A party seeking summary judgment bears the responsibility of informing the court "of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." **Tenbarge v. Ames Taping Tool Sys., Inc.**, 128 F.3d 656, 657 (8th Cir. 1997) (**quoting Celotex**, 477 U.S. at 325 (noting that the movant must show "there is an absence of evidence to support the nonmoving party's case.")). Under this court's local rules:

> The moving party shall set forth in the brief in support of the motion for summary judgment a separate statement of material

> facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law.

**See** NECivR 56.1(a)(1).

In the face of a properly-supported motion, "[t]he burden then shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'" ***Prudential Ins. Co. v. Hinkel***, 121 F.3d 364, 366 (8th Cir. 1997) (**quoting** Fed. R. Civ. P. 56(e)). A nonmoving party may not rest upon the mere allegations or denials of its pleadings but, rather, must show specific facts, supported by affidavits or other proper evidence, showing that there is a genuine issue for trial. **See** Fed. R. Civ. P. 56(e); ***Liberty Mut. Ins. Co. v. FAG Bearings Corp.***, 153 F.3d 919, 922 (8th Cir. 1998). A nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." ***Anderson***, 477 U.S. at 248. "[S]peculation and conjecture are insufficient to defeat summary judgment." ***Bloom v. Metro Heart Group of St. Louis, Inc.***, 440 F.3d 1025, 1028 (8th Cir. 2006). Additionally, under this court's local rules:

> The party opposing a motion for summary judgment shall include in its brief a concise response to the moving party's statement of material facts. The response shall address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response.

**See** NECivR 56.1(b)(1).

### B.   Conditional Qualified Privilege

In the complaint, the plaintiff alleges the defendant is liable for defamatory statements made by its employee Miss Adamsen regarding the February 7, 2003 incident under a theory of respondeat superior. **See** Filing No. 6, p. 2-3. The plaintiff alleges damages resulting from statements by Miss Adamsen on February 7, 2003 to the escort and other Restaurant employees. The defendant argues it is entitled to summary judgment

as a matter of law because any alleged defamatory statements made by its employee to co-employees were subject to the affirmative defense of conditional qualified privilege.

Nebraska recognizes common-law actions for slander and libel. Under Nebraska law:

> Defamation is of two types. There are words that are actionable per se, that is, in themselves, or words may be actionable per quod, that is, only on allegation and proof of the defamatory meaning of the words used and of special damages. **See *K Corp. v. Stewart***, 526 N.W.2d 429 (Neb. 1995). Spoken or written words are slanderous or libelous per se only if they falsely impute the commission of a crime involving moral turpitude, an infectious disease, or unfitness to perform the duties of an office or employment, or if they prejudice one in his or her profession or trade or tend to disinherit one. ***Matheson v. Stork***, 477 N.W.2d 156 (Neb. 1991).

***Hatcher v. McShane***, 670 N.W.2d 638, 644 (Neb. Ct. App. 2003). "A claim of defamation requires: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." ***Nolan v. Campbell***, 690 N.W.2d 638, 646-47 (Neb. 2004).

Under Nebraska law, "one who puts a libel or slander in circulation is liable for any subsequent publications that are the natural consequence of his or her act." ***McCune v. Neitzel***, 457 N.W.2d 803, 810 (Neb. 1990) **overruled on other grounds *Holmes v. Crossroads Joint Venture***, 629 N.W.2d 511 (Neb. 2001). The plaintiff claims the defendant is liable for any statements of Miss Adamsen on a theory of respondeat superior. Under the theory of respondeat superior,

> The law imputes to the principal or master responsibility for the negligent acts of his or her agent or servant done in obedience to the express orders or directions of the master, or within the scope of the employee's authority or employment in the master's business, and if those acts cause injury to third persons, the law holds the principal or master liable therefor. For injuries caused by the negligent act of an employee not directed or ratified by the employer, the employee is liable

> because he or she committed the act which caused the injury, while the employer is liable, not as if the act had been done by the employer, but because of the doctrine of respondeat superior, the rule of law which holds the master responsible for the negligent act of his or her servant committed while the servant was acting within the master's business. Unless the servant is liable, there can be no liability on the part of the master. The principal's liability, if any, is not that of a joint tort-feasor, but is derived solely from the liability of its agent, if any.

***Plock v. Crossroads Joint Venture***, 475 N.W.2d 105 (Neb. 1991) (**citing**, *inter alia*, ***Pullen v. Novak***, 99 N.W.2d 16 (Neb. 1959)) (internal citations omitted), **overruled on other grounds** ***Welsch v. Graves***, 582 N.W.2d 312, 316 (Neb. 1998), **and** ***Hynes v. Hogan***, 558 N.W.2d 35, 40 (Neb. 1997). The question of whether or not Miss Adamsen is liable for the claimed defamation is not before the court. Instead, the defendant argues it is not liable for the alleged torts because the alleged torts occurred during a period of privileged communication. In other words, any defamatory statements made by Miss Adamsen to co-workers on the night of the alleged incident, were not made to third parties.

Nebraska law recognizes a qualified privilege as an affirmative defense to a defamation claim. ***Malone v. Eaton Corp.***, 187 F.3d 960, 963 (8th Cir. 1999) (**citing** ***Turner v. Welliver***, 411 N.W.2d 298, 307 (Neb. 1987)); ***McCune***, 457 N.W.2d at 810; ***Helmstadter v. North Am. Biological, Inc.,*** 559 N.W.2d 794, 800 (Neb. Ct. App. 1997).

> Conditional or qualified privilege comprehends communications made in good faith, without actual malice, with reasonable or probable grounds for believing them to be true, on a subject matter in which the author of the communication has an interest, or in respect to which the author has a duty, public, personal, or private, either legal, judicial, political, moral, or social, made to a person having a corresponding interest or duty. A communication between those sharing a common interest is conditionally privileged.

***Helmstadter,*** 559 N.W.2d at 801 (**citing** ***Turner***, 411 N.W.2d at 298). For example, in ***Molt v. Lindsay Mfg. Co.***, 532 N.W.2d 11, 17 (Neb. 1995), the Nebraska Supreme Court found a qualified privilege exists where the defendant's employees were the recipients of the alleged defamatory communications and such "employees had a bona fide interest in the subject matter or stood in such relation that it was reasonable or proper for him or her

7

to receive such information." *Id.* at 17. Whether the defendant has shown a qualified privilege exists is as a matter of law. ***Young v. First United Bank of Bellevue***, 516 N.W.2d 256, 258 (Neb. 1994).

### 1. Author's Interest or Duty

Miss Adamsen, as a Red Robin employee, was required to report all incidents and accidents to Red Robin Management. **See** Filing No. 30 - Depo. Miss Adamsen p. 20:24 to 21:6. Additionally, Red Robin's harassment policy encouraged employees to report any occurrence of harassment toward an employee or guest. **See** Filing No. 70 - Ex. 14 to Depo. Mr. Ritter. The plaintiff does not dispute Miss Adamsen's communications to other Red Robins employees about the alleged incident were part of a common interest or duty. Due to Miss Adamsen's employment relationship and the nature of the communications, a qualified privilege exists, as a matter of law, for Miss Adamsen's communications about the plaintiff's alleged conduct. "Where a qualified privilege exists, there can be no recovery without proof of malice." ***Turner v. Welliver***, 411 N.W.2d at 307. "The truth in itself and alone shall be a complete defense [to defamation] unless it shall be proved by the plaintiff that the publication was made with actual malice. Actual malice shall not be inferred or presumed from publication." Neb. Rev. Stat. § 25-840 (Reissue 1989). ***Young***, 516 N.W.2d at 259.

### 2. Malice

The plaintiff contends there is a genuine dispute about whether Miss Adamsen's statements were made without malice. Typically, "whether a publication was maliciously made is a question of fact for the jury." ***Helmstadter***, 559 N.W.2d at 801. Here, the plaintiff argues Miss Adamsen harbored malice, that is hate, spite or ill will toward the person about whom the statement had been published. **See *Young***, 516 N.W.2d at 259. The plaintiff alleges there are disputed material facts about Miss Adamsen's truthfulness and motives because (1) there is inconsistent or conflicting testimony about the plaintiff's alleged conduct, (2) this was the first time Miss Adamsen wore the mascot and she suffered poor sensory perception from inside the mascot, (3) Miss Adamsen talked to

others about material gain stemming from the incident, (4) Miss Adamsen felt upset about the plaintiff's special treatment, and (5) Miss Adamsen attempted to solicit another witness on her behalf.

The plaintiff fails to offer proof such that a reasonable jury could return a verdict for the plaintiff. Without making a credibility determination, the plaintiff's evidence is insufficient to raise a material issue of fact about whether Miss Adamsen's communications to co-employees were made with malice. First, there is nothing about the nature of the alleged conduct or the manner of its communication that supports the plaintiff's argument Miss Adamsen harbored malice toward the plaintiff. That the truth of Miss Adamsen's statements is disputed does not destroy the qualified privilege or tend to show the statements were maliciously made.

Second, if Miss Adamsen misperceived the nature of the plaintiff's conduct due to the confining nature of the mascot costume, her misperception, under the circumstances, cannot reasonably equate to an intentional or reckless falsehood. The plaintiff admits he made physical contact with Miss Adamsen in the areas of her back, shoulder and abdomen, and tugged the mascot's tail. **See** Filing No. 58 - Depo. Patrick McPherson 56:15 to 57:13. Similarly, while the fact that this was the first time Miss Adamsen wore the costume may increase the likelihood of a misperception, it does not increase the likelihood that her statements were intentionally or recklessly false. Additionally, Miss Adamsen reported alleged conduct which she felt herself, rather than by some other means, for example viewing the touching of a third-party.

Third, the evidence shows that, if Miss Adamsen made comments about financial gain related to the incident, the comments were made well after the incident and in connection with a future civil lawsuit. Such comments equally support an inference that Miss Adamsen's disclosures about the plaintiff's conduct were as likely true as false. Therefore, the alleged comments about financial gain do not support an inference the Miss Adamsen made malicious statements about the plaintiff.

Fourth, the plaintiff alleges Miss Adamsen had ill will toward the plaintiff because she believed the plaintiff's party (1) had improperly demanded special treatment, (2) was a member of the privileged elite, (3) may have complained about the professional

competency of Miss Adamsen or her friends, as hostesses, at the grand opening, and (4) made comments about determining the gender of the mascot and/or having sex with the mascot. Based on these suppositions, the plaintiff alleges Miss Adamsen "may have made allegations of misconduct against the VIP party . . . to retaliate against Sigerson and his guests. . . [and] to publically embarrass them." **See** Filing No. 125 - Plaintiff's Brief p. 10. The evidence presented by the plaintiff in support of these suggestions is: (1) Miss Adamsen was told the plaintiff's party was a VIP party who had been dissatisfied with service during the grand opening of the restaurant, (2) Miss Adamsen felt "kind of upset" that the VIP party received special treatment and "regular citizens" did not, (3) other employees shared Miss Adamsen's sentiment, and (4) Miss Adamsen was disgusted by the comments made about the mascot by the VIP party. Such evidence is insufficient to form a reasonable inference Miss Adamsen's statements were contrived based on ill will toward the plaintiff.

Fifth, the plaintiff alleges a reasonable inference can be made from the evidence that Miss Adamsen knew her statements were false because she attempted to get assistance from her friends to support her "scheme." In support of this allegation, the plaintiff shows that a Red Robin employee, Kellisha Hill (Miss Hill), testified during her deposition that another employee, Melissa Walden (Miss Walden) did not see what happened between the plaintiff and Miss Adamsen, but that Miss Adamsen had asked Miss Walden to be a witness, if needed. **See** Filing No. 119 - Depo. Miss Hill p. 43 to 46. Miss Hill's testimony was based on a conversation she had with Miss Walden. *Id.* There is no evidence Miss Walden was asked to testify falsely on behalf of Miss Adamsen. Miss Walden testified she did see what happened and that Miss Adamsen did not ask her to testify falsely. **See** Filing No. 124 - Depo. Miss Walden p. 46 to 47, 89, 104 to 105. The plaintiff also argues Miss Adamsen "may have been motivated by a simple teenage desire to enjoy a Friday night with her friends instead of working." **See** Filing No. 125 - Plaintiff's Brief p. 11. However, the plaintiff provides no evidence to support this statement other than a description of Miss Adamsen's activities after she left work. Accordingly, the plaintiff has provided insufficient evidence to form a reasonable inference that Miss Adamsen knew her statements were false or that Miss Adamsen attempted to procure false testimony.

Finally, the plaintiff's contentions taken separately or taken together do not provide sufficient evidence of malice to allow the matter to proceed. The plaintiff provides only speculation and conjecture, and in the absence of specific facts supported by the evidence, the plaintiff fails to demonstrate a genuine issue of material fact, such that a reasonable jury could return a verdict for the plaintiff. Because Miss Adamsen's statements were subject to a qualified privilege and the plaintiff has failed to make a sufficient showing that Miss Adamsen's statements were made with malice, the plaintiff cannot prevail on his defamation claim and summary judgment must be granted. Upon consideration,

**IT IS ORDERED:**

1. The defendant's Second Motion for Summary Judgment (Filing No. 100) is granted.

2. Pursuant to Fed. R. Civ. P. 58, a separate judgment will be entered on this date in accordance with this Order and the Order dated October 19, 2005.

DATED this 20th day of September, 2006.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge